Charles S. Zimmerman, MN Bar No. 120054
ZIMMERMAN REED, PLLP
14646 N. Kierland Blvd., Suite 145
Scottsdale, AZ 85254
(480) 348-6400
(480) 348-6415 Facsimile
Email: Charles.Zimmerman@zimmreed.com

*Attorney for Plaintiff*

(Additional Counsel Listed Below)

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

Terry Coyle, individually and on behalf of all similarly situated individuals,

Plaintiff,

-v-

FLOWERS FOODS, INC., AND HOLSUM BAKERY, INC.

Defendants.

Court File No. _

## CLASS ACTION COMPLAINT

(EQUITABLE RELIEF SOUGHT)

Plaintiff, on behalf of himself and other similarly situated individuals, by and through their undersigned counsel, files this Class Complaint and avers as follows:

<u>NATURE OF ACTION</u>

1.      This is a Class Action Complaint brought to obtain declaratory, injunctive and monetary relief on behalf of a class of individuals who operate(d) as fresh bakery product distributors for Defendants, Flowers Foods, Inc., and Holsum Bakery, Inc., (collectively "Flowers" or "Defendants") and who Defendants classify or classified as independent contractors. Plaintiff allege violations of Arizona Wages and Labor Laws, A.R.S. §§ 23-350, *et seq.* ("ARS") and Arizona common law.

2.      Defendants employ "distributors" to deliver fresh baked goods to their customers (primarily grocery stores, mass retailers, and fast food chains). In addition to delivering Flowers Foods' products to Defendants' customers, distributors stock the products on store shelves and assemble promotional displays designed and provided by Defendants.

3.     Plaintiff brings this suit on behalf of all individuals who operate(d) as distributors for Flowers, and are or were classified as independent contractors, anywhere in Arizona, at any time during the applicable limitations period ("Class" or "Distributors").

4.     This action challenges both the classification of distributors as independent contractors and Defendants' denial to Plaintiff and the Class the rights, obligations, privileges and benefits owed to them as employees or, in the alternative breach of fiduciary duties arising out of Flowers' standard Distributor Agreements.

<u>PARTIES</u>

5.     Plaintiff Terry Coyle ("Coyle") is a resident of Pima County, Arizona who works as a Flowers Distributor in that state. He performs delivery and merchandizing services to local retailers of bakery and snack food products manufactured or sold by Flowers. Plaintiff Coyle operates out of a distribution center run by Holsum Bakery, Inc. in Touscon, Arizona.  Plaintiff regularly works 50–55 hours per week and did not receive overtime premium pay at any time during the class period. Defendants make weekly wage deductions from Coyle's paycheck for "warehouse" and "administrative" fees.

6.     Flowers Foods, Inc. is a Georgia corporation with its principal place of business at 1919 Flowers Circle, Thomasville, Georgia, 31757. Flowers Foods hires individuals, whom it classifies as independent contractors, to distribute its products by delivering them to grocery stores and stocking the products on store shelves. Flowers Foods, Inc. employs distributors in 31 states throughout the southern and eastern parts of the United States.

7.     Holsum Bakery, Inc. is an Arizona corporation with its principal place of business at 2338 W. Royal Palm Road, Suite J, Phoenix, AZ 85021. Holsum Bakery, Inc. is a wholly owned subsidiary of Flowers Foods, Inc. Defendants hire individuals, whom they classify as independent contractors, to deliver and stock bakery and snack food products from its Chandler, Arizona distribution center.

JURISDICTION AND VENUE

8.     This Court has jurisdiction over the claims asserted in this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2) because, based upon information and belief, this is a class action brought pursuant to Rule 23 of the Federal Rules of Civil Procedure, the aggregate amount in controversy exceeds $5 million, and Defendant Flowers Foods, Inc. is from a different state than Plaintiff.

9.     Venue is proper in this Court under 28 U.S.C §§ 1391(b)(2) and 1391(c) because a substantial part of the events giving rise to the claim occurred in this district.

10.     Plaintiff brings this action on behalf of themselves and an Arizona Class.

CLASS ACTION ALLEGATIONS

11.     Plaintiff brings Counts I, II, and III of this Complaint as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of an "Arizona Class" defined as follows:

> All individuals who, through a contract or agreement with Defendants or otherwise, performed or perform as Distributors for Defendants under an agreement with Holsum Bakery, Inc. and who were classified by Defendants as "independent contractors" (collectively "Covered Positions") at any time from the date that is three years preceding the commencement of this action through the close of the court-determined opt-out period.

Plaintiff reserve the right to redefine the Class prior to class certification.

12.     Numerosity: Members of the Class are so numerous that their individual joinder is impracticable. The precise number of Class members is unknown to Plaintiff. However, upon information and belief, it is in excess of 100 individuals. The true number of Class members is, however, likely to be known by Defendants, and thus, Class members may be notified of the pendency of this action by first class mail, electronic, and published notice.

13.     Commonality: There are numerous questions of law and fact common to Plaintiff and the Class; those questions predominate over any questions that may affect individual Class members, and include the following:

a.      whether Plaintiff and members of the Class have been misclassified as independent contractors and actually were or are employees of Defendants;

b.      whether Defendants' wrongfully withheld wages from Plaintiff and members of the Class;

c.      whether Plaintiff and members of the Class are owed additional wages based on improper withholding of wages in violation of Arizona law;

d.      whether Defendants owed a fiduciary duty to Plaintiff and members of the Class under a theory of principal and agent;

e.      whether Defendants have breached their fiduciary duties owed to Plaintiff and members of the Class under Arizona common law by directly competing against Plaintiff in the same stores and for the same shelf space that Plaintiff was hired by Defendants to service;

14.     Typicality: Plaintiff's claims are typical of the other members of the Class. Plaintiff is informed and believes that, like other distributors, Plaintiff has been harmed by Defendants' uniform practice of negotiating with national accounts for pricing, promotions, and shelf space on behalf of Distributors while at the same time conducting the same negotiating on behalf of itself to sell its competing products directly to the same stores. Similarly, Plaintiff and all class members were harmed by Defendants' common sale chargeback policy.

15.     Adequacy: The named Plaintiff will adequately represent the interests of the Class. He has been treated in the same manner as other Class Members by Defendants and has been damaged by this treatment in the same manner as other class Members by his loss of overtime premium wages, his exclusion from employee compensation

programs, plans and agreements, and his payment of Defendants' expenses. Likewise, he has been damaged in the same manner by Defendants' sales practices and stale policy. Plaintiff is committed to vigorously prosecuting this action. Plaintiff has retained attorneys who are well qualified to handle lawsuits of this type. Plaintiff has no interests that are adverse to those of the Class.

16.     Predominance: This case should be certified as a class action because the common questions of law and fact concerning Defendants' liability predominate over any individual questions, including the amount of damages incurred by each person.

17.     Superiority: A class action is the only realistic method available for the fair and efficient adjudication of the claims of the Class. The expense and burden of individual litigation makes it impracticable for members of the Class to seek redress individually for the wrongful conduct alleged in this Complaint. Were each individual member required to bring a separate lawsuit, the resulting multiplicity of proceedings would cause undue hardship and expense for the litigants and the Court, and create the risk of inconsistent rulings, which would be contrary to the interest of justice and equity. Litigating these claims in a single action will streamline discovery and avoid needless repetition of evidence at trial.

## FACTUAL BASIS

18.     Defendant Flowers Foods is a corporation whose business consists of distributing bakery and snack food products to retail customers, using a centralized network of communication, distribution, and warehousing facilities integrating Class members into that existing network of operations. One of Defendant Flowers Foods's bakeries and several of its warehouses are operated by Defendant Holsum Bakery, Inc.

19.     Flowers Foods currently operates two business segments: a direct-store-delivery segment ("DSD Segment") and a warehouse delivery segment ("Warehouse Segment"). The DSD Segment (84% of total sales) operates 38 bakeries that market a wide variety of fresh bakery foods, including fresh breads, buns, rolls, tortillas, and snack cakes. These products are sold through a DSD route delivery system to retail and

foodservice customers. The Warehouse Segment (16% of total sales) operates eight bakeries that produce snack cakes, breads and rolls for national retail, foodservice, vending, and co-pack customers, which are delivered through customers' warehouse channels and one bakery mix plant.

20.     The Warehouse Segment's fresh snack cakes and frozen breads and rolls are sold nationally direct to customers' warehouses and delivered through frozen and non-frozen contract carriers. Defendants' Warehouse Segment distributes a portion of their packaged bakery snack products from a central distribution facility. Flowers manufactures snack cake products at various bakeries throughout the country in long production runs of a single product, which are then shipped to the central distribution facility. Products coming from different bakeries are then cross-docked and shipped directly to retailers' warehouses nationwide.

21.     Defendants' Direct Store Delivery Segment is comprised of Distributors who contract with Defendants for the rights to distribute certain brands of fresh packaged bakery foods in their geographic territories.

22.     Both segments may serve the same customer, and so a customer receives products from both the DSD segment and the warehouse segment.

23.     There is overlap in products between the DSD segment and the warehouse segment whereby a DSD segment brand competes with a Warehouse segment brand. For example, Mrs. Freshly's (a Warehouse brand) competes with Tastykake (a DSD brand).

24.     Overarching both segments is a National Accounts team—a group of approximately two dozen sales employees who are responsible for leading negotiations with large retailers with respect to the price of products, product selection, available shelf space, displays, promotions, levels of service, and nearly all other aspects of the sale of the products to the national accounts.

25.     Defendant Flowers Foods, by and through its subsidiaries such as Defendant Holsum Bakery, Inc., ships bakery and snack products to warehouses and

Distributors, such as Plaintiff and members of the Class, who arrive at a warehouse early in the morning and load their vehicles with Defendants' products.

26.     The Distributors then deliver the product to Defendants' retailer-customers at the time and place specified by Defendants.

27.     The distribution agreement between Defendants and its distributors (including Plaintiff) has no specific end date and can be terminated by either party at any time with limited notice.

28.     Defendant Flowers Foods markets its bakery and snack products to retailers such as Target, Wal-Mart, Costco, Dollar General, and other grocery chains and mass merchants. Defendants require all Distributors to appoint Defendants as Distributors' agents for the purpose of soliciting and negotiating orders from customers. Defendant Flowers Foods then negotiates with the retailers to set virtually all terms of the relationship including:

        a) wholesale and retail prices for products;

        b) service and delivery agreements;

        c) shelf space to display products;

        d) product selection;

        e) promotional pricing for products;

        f) the right to display promotional materials;

        g) print advertisements in retailers' newspaper ads; and

        h) virtually every other term of the arrangement.

29.     In some cases, Flowers Foods negotiates and agrees with retailers and fast food restaurants to manufacture and distribute the retailer's store brand (or private label) bread products.

30.     Defendant Flowers Foods often negotiates the above terms for fresh-baked bread and snack products (which are distributed by Plaintiff and members of the Class) at the same time as it negotiates terms for its shelf-stable snack products (which are not distributed by Plaintiff). The result is that Distributors' job duties and ability to

earn income is tied directly to the sale and promotion of products outside of their control.[1]

31.     Employees of Defendant Holsum Bakery, Inc. assist Defendant Flowers Foods in its negotiations with customers at a local level.

32.     The relationship between each member of the Class and Defendants are essentially the same in material respects.

33.     Plaintiff and members of the proposed Class must strictly follow Defendants' instructions and adhere to the pricing, policies, and procedures negotiated between Defendants and their retailer-customers.

34.     Distributors use Defendants' hand-held computer to log the delivery, and Defendants bill their customers using the data entered into the computer by the Distributor. The terms of the sale are negotiated between Defendants and their retailer-customer.

35.     Distributors place Defendants' products on the retailer-customer's shelves, remove stale or rejected product, and organize the retailer-customer's display shelf. If Defendants are running a sale or promotion, the Distributor also constructs and stocks the promotional display. Defendants usually reimburse Distributors for stale or rejected product.

36.     Defendants represented to Plaintiff and other Distributors that they would run their businesses independently, have the discretion to use their business judgment, and have the ability to manage their businesses to increase profitability.

---

[1] For example, Flowers Foods negotiated with a large retailer that it would manufacture the retailer's private label bread at a near zero profit margin in exchange for the retailer providing space for Flower's Foods' Warehouse segment shelf-stable cake products. The result is that Flowers Foods profits off the sale of its shelf-stable products while passing the cost and expense of distributing its loss-leading private label bread to Plaintiff and members of the proposed Class, all of whom have no right to reject the arrangement without losing their jobs.

37.     Contrary to its representations, Defendants denied Plaintiff and other Distributors benefits of ownership and entrepreneurial skill by retaining and exercising the following rights:

a) the right to negotiate the wholesale price for the purchase and sale of products;

b) the right to negotiate shelf space in the stores in the Distributor's territory;

c) the right to negotiate the retail sale price for products;

d) the right to establish all sales and promotions and to require Distributors to follow them;

e) the right to change orders placed by Distributors, to require them to pay for product they did not order, load it on their trucks, deliver it to stores, maintain the product in the store, remove the product from the store, and return it to the warehouse for credit; Distributors who did not attempt to distribute the extra product were billed for the full wholesale price of that product;

f) the right to assign delivery stops to each Distributor in a particular order and require Distributors to get approval for following a different order;

g) the right to discipline Distributors, up to and including termination, for reasons including hiring employees to run their routes, taking time off work, or refusing a specific order to deliver a product to a particular store at a particular time;

h)     the right to handle customer complaints against the Distributor and to take disciplinary action;

i) the right to withhold pay for certain specified expenses;

j) the right to unilaterally terminate the employment relationship;

k)     the right to unilaterally vary the standards, guidelines, and operating procedures; and

l) various other rights reserved by Defendants.

38.     Plaintiff and Class members were, or are, required to accept Defendants' conditions of employment or face termination.

39.     Defendants not only retained the rights listed above, but they exercised the rights as well.

40.     For example, Defendants regularly modify a Distributor's product orders to increase the amount of the order. If a Distributor refuses the additional product, Defendants bill the Distributor for the product and deduct the cost from the Distributor's wages.

41.     Defendants require Distributors to process all transactions through a hand held computer they provide to them. The hand held computer controls the product prices, maintains customer information, tracks mileage, and monitors Defendants' business performance.

42.     Defendants control the Plaintiff' and members of the Class' opportunities for profit or loss both by controlling wholesale pricing and negotiating retail pricing. Specifically, Defendants negotiate the sale of its products with major retailers. Plaintiff and members of the Class then deliver the products to store locations per the agreement between Defendants and the retailer. Plaintiff lack discretion as to what products to distribute to a particular store, whether to run sales or promotions, how frequently to service stores, and similar discretion that would allow them to increase (or decrease) the profitability of their work.

43.     Defendants also promote products and arrange for outside products to be on the retailers' shelves that are not sold or stocked by Plaintiff and members of the Class, thus creating greater competition for shelf space and competition among the products that are sold. This negatively impacts the business and profitability for Plaintiff and members of the Class.

44.     Distributors' investment in equipment to operate their route is relatively low. Many distributors use their personal vehicles and a trailer to transport Flowers products to retailers. Apart from the purchase of a small trailer, there is no other

investment necessary because Defendants provide computer equipment, administrative support, warehouse space, advertisements, promotional materials, bakery trays, market advice, strategic development, and virtually every other business necessity. Defendants even arrange for insurance and vehicle financing on behalf of Distributors; Distributors pay for the insurance through wage deductions.

45.     The distribution job performed by Plaintiff and members of the Class does not require specialized skills.

46.     Because they were misclassified as non-employees, Plaintiff and members of the Class were denied the rights and benefits of employment, including, but not limited to overtime premium wages.

47.     Plaintiff and members of the Class have incurred expenses for equipment, insurance, product loss, product return, and other expenses that Defendant has required them to purchase or pay, or that are necessary for their work.

48.     Distributors work, on average, a total of 50–55 hours during a seven-day workweek for which no Plaintiff or, upon information and belief, member of the proposed class has received overtime premium wages.

49.     Plaintiff never worked less than 45 hours per week and at times had to work up to 60 hours to service all their assigned stores. Plaintiff is aware of other Distributors who worked 50 hours or more per week on average.

50.     Defendants' mischaracterization of the Distributors as independent contractors, the concealment or non-disclosure of the true nature of the relationship between Defendants and the distributors, and the attendant deprivation of substantial rights and benefits of employment are part of an on-going unlawful practice by Defendants which this Court should enjoin.

COUNT I

IMPROPER WITHHOLDING OF WAGES

IN VIOLATION OF ARIZONA STATE LAW

A.R.S. §§ 23-350 *et seq.*

(On behalf of the named Plaintiff and members of the Class)

51.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding Paragraphs.

52.     Arizona Statutes section 23-352 provides in pertinent part:

> No employer may withhold or divert any portion of an employee's wages unless one of the following applies: 1. The employer is required or empowered to do so by state or federal law, 2. The employer has written authorization from the employee, or 3. There is a reasonable good faith dispute as to the amount of wages due.

Ariz. Rev. Stat. Ann. § 23-352.

53.     In committing the wrongful acts alleged to be in violation of Arizona law, Defendants acted willfully in that they knowingly, deliberately, and intentionally failed to pay wages to Plaintiff and other members of the Class.

54.     As a result of Defendants' failure to pay wages, Plaintiff and the other members of the Class were damaged in an amount to be proved at trial.

55.     Therefore, Plaintiff demands that they and the other members of the Class be paid past due wages as required by the Arizona state law for every hour of worked in any work week for which they were not compensated, including treble damages as allowed by A.R.S. § 23-355,  plus interest, damages, penalties, and attorneys' fees as provided by law.

COUNT II

BREACH OF FIDUCIARY DUTIES

(Brought by Plaintiff on behalf of themselves and the Arizona Class)

55.     Plaintiff re-allege and incorporate by reference each and every allegation set forth in the preceding Paragraphs.

56.     Regardless whether Plaintiff and the Proposed Class have been misclassified as independent contractors, Defendants owed a fiduciary duty to Plaintiff and the members of the Class as agents bound to exercise the utmost good faith and loyalty toward their principals.

57.     Under Arizona common law, "unless otherwise agreed, an agent is subject to a duty to his principal to act solely for the benefit of the principal in all matters connected with his agency." Restatement (Second) of Agency, § 387 (1958).

58.     It is unlawful under Arizona law for Defendants to breach its fiduciary duties owed to Plaintiff and other members of the Class.

59.     Defendants breached their fiduciary duty by marketing, soliciting, and placing competitive products against those sold and stocked by its masters—Plaintiff and members of the Class.

60.     Plaintiff and members of the Class have been adversely affected and directly harmed by this competitive action of Defendants as they sold less product, thereby having less orders to fill, and consequently making less sales and less profit.

61.     The breach of the fiduciaries duties by Defendants has caused damages to Plaintiff and members of the Class.

62.     Damages for a breach of the duty of loyalty of an employee may be compensatory or punitive or both.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests of this Court the following relief on behalf of himself, all members of the Class and all other similarly situated individuals:

a.    An Order certifying the Class, appointing Plaintiff as Class Representatives, and appointing the undersigned counsel of record as Class Counsel;

b.    An Order for declaratory and injunctive relief designating the Plaintiff and members of the Class as employees and enjoining Defendants from pursuing the illegal policies, acts and practices described in this Complaint;

c.    An Order declaring the Defendants' conduct as willful, not in good faith and not based on reasonable grounds;

d.    An Order requiring Defendants to compensate Plaintiff and the other members of the Class for the reasonable value of the benefits Plaintiff provided to Defendants;

e.    Reimbursement of improperly withheld wages for all unpaid work as described in this Complaint;

f.    Payment of any penalties or other amounts under any applicable laws, statutes or regulations, including but not limited to liquidated damages;

g.    Judgment in favor of each Class member for damages suffered as a result of the conduct alleged herein, to include pre-judgment interest;

h.    Award Plaintiff reasonable attorneys' fees and costs;

i.    Award Plaintiff and the other members of the Class punitive damages in an amount to be determined at trial; and

j.    Grant such other and further legal and equitable relief as this Court deems just and necessary.

## **JURY DEMAND**

Pursuant to Fed. R.Civ.P. 38(b), Plaintiff demands a trial by jury.

Respectfully submitted,

ZIMMERMAN REED, PLLP

Date: July 20, 2015          */s/ Charles S. Zimmerman*
                             Charles S. Zimmerman, MN Bar No. 120054
                             Hart L. Robinovitch, AZ Bar No. 020910
                             14646 N. Kierland Blvd., Suite 145
                             Scottsdale, AZ 85254
                             Telephone: (480) 348-6400
                             Email: Charles.Zimmerman@zimmreed.com
                             Email: Hart.Robinovitch@zimmreed.com

                             *Attorneys for Plaintiff*