Shawn J. Wanta, *pro hac vice*
Patricia A. Bloodgood, *pro hac vice*
Baillon Thome Jozwiak & Wanta LLP
100 S. Fifth St., Suite 1200
Minneapolis, MN 55402
Telephone: (612) 252-3570
Facsimile: (612) 252-3571
Email: sjwanta@baillonthome.com
Email: pabloodgood@baillonthome.com

*Attorneys for Plaintiff*

*(Additional counsel for Plaintiff listed below)*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Terry Coyle, individually and on behalf of all similarly situated individuals,<br><br>                        Plaintiff,<br><br>-v-<br><br>Flowers Foods, Inc., and Holsum Bakery, Inc.,<br><br>                        Defendants. | Case No. CV-15-01372-PHX-DLR<br><br>**PLAINTIFF'S FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>(EQUITABLE RELIEF SOUGHT)<br><br><br>(Assigned to the Hon. Douglas L. Rayes) |

Plaintiff, on behalf of himself and other similarly situated individuals, by and through their undersigned counsel, files this First Amended Class and Collective Action Complaint and avers as follows:

## <u>NATURE OF ACTION</u>

1. This is a Class and Collective Action Complaint brought to obtain declaratory, injunctive and monetary relief resulting from Defendants' misclassification of their Arizona bakery distributor drivers ("Distributors") as "independent contractors." Defendants Flowers Foods, Inc. ("Flowers Foods") and Holsum Bakery, Inc. ("Holsum Bakery") (collectively "Flowers" or "Defendants") are in the wholesale bakery business and rely on Distributors to deliver to and stock bakery goods in grocery stores, mass retailers, and fast food chains. Plaintiff alleges violations of the Federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*; Arizona Wages and

1

Labor Laws, A.R.S. §§ 23-350, *et seq.*; Arizona common law; and seek Declaratory Judgment pursuant to 28 U.S.C. § 2201 and A.R.S. §§ 12-1831 *et seq.*

2.     Defendants employ individuals it calls Independent Distributors (Distributors) to deliver fresh baked goods and certain cake products to Defendants' customers. In addition to delivering Flowers' products to Defendants' customers, Distributors stock the products on store shelves and assemble promotional displays designed and provided by Defendants.

3.     Plaintiff brings his state statutory and common law claims on behalf of a proposed opt-out class pursuant to Federal Rule of Civil Procedure 23 ("Rule 23 Class") consisting of all persons who worked as Distributors for Defendants in the state of Arizona at any time during the last three years prior to the filing of this Complaint.

4.     Plaintiff also brings this action as an opt-in collective action on behalf of Plaintiff and all similarly situated individuals for violations of the Federal Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA Collective Class"), consisting of all persons who worked as Distributors for Defendants in the state of Arizona at any time within three years prior to the filing of this Complaint.

5.     This action challenges both the classification of Distributors as independent contractors and Defendants' denial to Plaintiff, the Rule 23 Class, and the FLSA Collective Class (together, the "Classes" or the "proposed Classes") of the rights, obligations, privileges and benefits, including overtime compensation, owed to them as employees under the respective state and federal laws.

**PARTIES**

6.     Plaintiff Terry Coyle ("Coyle") is a resident of Pima County, Arizona who works as a Distributor for Flowers in Arizona. He performs delivery and merchandizing services to local retailers of bakery and snack food products manufactured or sold by Flowers. Plaintiff Coyle operates out of a distribution center run by Holsum Bakery, Inc. in Tucson, Arizona. Plaintiff regularly works 50–55 hours per week and did not receive overtime premium pay at any time during the statutory

period.  Plaintiff Coyle performed part of his services for Defendants using his small personal vehicle on a weekly basis during the applicable statutory period.

7.      Flowers Foods is a Georgia corporation with its principal place of business at 1919 Flowers Circle, Thomasville, Georgia 31757. Flowers Foods hires individuals, whom it classifies as independent contractors, to distribute its products by delivering them to grocery stores and stocking the products on store shelves. Flowers Foods employs Distributors in at least 31 states throughout the southern and eastern parts of the United States.  Flowers Foods is and at all relevant times was the employer of Plaintiffs and the FLSA Collective and Rule 23 Classes under Arizona law.

8.      Holsum Bakery is an Arizona corporation with its principal place of business at 2338 W. Royal Palm Road, Suite J, Phoenix, AZ 85021. Holsum Bakery is a wholly owned subsidiary of Flowers Foods. Holsum Bakery hires individuals, whom it classifies as independent contractors, to deliver and stock bakery and snack food products from its Chandler, Arizona distribution center.  Holsum Bakery is and at all relevant times was an employer under Arizona law.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. § 1331, federal question jurisdiction, and 28 U.S.C. § 1367, supplemental jurisdiction for the Arizona claims.

10.      This Court also has jurisdiction over the claims asserted in this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2) because, based upon information and belief, the proposed Classes contain more than 150 members, the aggregate amount in controversy exceeds $5 million, and Defendant Flowers Foods, Inc. is from a different state than Plaintiff.

11.      Venue is proper in this Court under 28 U.S.C §§ 1391(b)(2) and 1391(c) because a substantial part of the events giving rise to the claim occurred in this district.

## **FACTUAL BASIS**

10.     Defendant Flowers Foods is a corporation whose business consists of developing, baking, and distributing bakery and snack food products to retail customers, using a centralized network of communication, distribution, and warehousing facilities.  Distributors are integrated into Flowers' existing network of operations.

11.     Flowers Foods currently operates two business segments: a direct-store-delivery segment ("DSD Segment") and a warehouse delivery segment ("Warehouse Segment"). The DSD Segment (84% of total sales) operates 38 bakeries that market a wide variety of fresh bakery foods, including fresh breads, buns, rolls, tortillas, and snack cakes. These products are sold through a DSD route delivery system to retail and foodservice customers. The Warehouse Segment (16% of total sales) operates eight bakeries that produce snack cakes, breads and rolls for national retail, foodservice, vending, and co-pack customers, which are delivered through customers' warehouse channels and one bakery mix plant.

12.     The Warehouse Segment's fresh snack cakes and frozen breads and rolls are sold nationally direct to customers' warehouses and delivered through frozen and non-frozen contract carriers. Defendants' Warehouse Segment distributes a portion of their packaged bakery snack products from a central distribution facility. Flowers manufactures snack cake products at various bakeries throughout the country in long production runs of a single product, which are then shipped to the central distribution facility. Products coming from different bakeries are then cross-docked and shipped directly to retailers' warehouses nationwide.

13.     Defendants' Direct Store Delivery Segment is comprised of Distributors who contract with Defendants for the rights to distribute certain brands of fresh packaged bakery foods in their geographic territories.

14.     Both segments may serve the same customer, and so a customer receives products from both the DSD segment and the warehouse segment.

15.     There is overlap in products between the DSD segment and the warehouse segment whereby a DSD segment brand competes with a Warehouse segment brand. For example, Mrs. Freshly's (a Warehouse brand) competes with Tastykake (a DSD brand).

16.     Overarching both segments is a National Accounts team—a group of approximately two dozen sales employees who are responsible for leading negotiations with large retailers with respect to the price of products, product selection, available shelf space, displays, promotions, levels of service, and nearly all other aspects of the sale of the products to the national accounts.

17.     Defendant Flowers Foods, by and through its subsidiaries such as Defendant Holsum Bakery, ships bakery and snack products to warehouses and Distributors, such as Plaintiff and members of the proposed classes, arrive at a warehouse early in the morning and load their vehicles with Defendants' products.

18.     The Distributors then deliver the product to Defendants' retailer-customers at the time and place specified by Defendants.

19.     The distribution agreement between Defendants and its Distributors (including Plaintiff and members of the proposed Classes) has no specific end date and can be terminated by either party at any time with limited notice.

20.     Drivers have no ability to bargain or negotiate over the terms of the distribution agreement.

21.     Defendant Flowers Foods markets its bakery and snack products to retailers such as Target, Wal-Mart, Costco, Dollar General, and other grocery chains and mass merchants.  Defendant Flowers Foods negotiates with the retailers to set virtually all terms of the relationship including:

        a.   wholesale and retail prices for products;

        b.   service and delivery agreements;

        c.   shelf space to display products;

        d.   product selection;

e.   promotional pricing for products;

f.   the right to display promotional materials;

g.   print advertisements in retailers' newspaper ads; and

h.   virtually every other term of the arrangement.

22.    In some cases, Flowers Foods negotiates and agrees with retailers and fast food restaurants to manufacture and distribute the retailer's store brand (or private label) bread products.

23.    Defendants extend credit to national accounts and negotiate payment terms, including entering into pay-by-scan agreements that require national accounts' computer systems to integrate with Flowers Foods' computer systems.

24.    Defendant Flowers Foods often negotiates the above terms for fresh-baked bread and snack products (which are distributed by Plaintiffs and members of the proposed Classes) at the same time as it negotiates terms for its shelf-stable snack products (which are not distributed by Plaintiffs). The result is that Distributors' job duties and ability to earn income is tied directly to the sale and promotion of products outside of their control.[1]

25.    Some fresh-baked products are identical to shelf-stable products in formulation.  For example, Defendants manufacture, sell, and distribute pecan rolls that are identical (from the same dough batch at a factory) through both fresh (DSD) and shelf-stable (warehouse) distribution channels.   But Flowers sells the warehouse branded product at a lower price than the fresh branded product in direct competition with Distributors.

---

[1] For example, Flowers Foods negotiated with a large retailer that it would manufacture the retailer's private label bread at a near zero profit margin in exchange for the retailer providing space for Flower's Foods' Warehouse segment shelf-stable cake products. The result is that Flowers Foods profits off the sale of its shelf-stable products while passing the cost and expense of distributing its loss-leading private label bread to Plaintiff and members of the proposed classes, all of whom have no right to reject the arrangement without losing their jobs.

26.     Employees of Defendant Holsum Bakery assist Defendant Flowers Foods in its negotiations with customers at the local level.

27.     The relationship between each member of the proposed Classes and Defendants are essentially the same in material respects.

28.     Defendants reserve the right to control Plaintiff and the members of the proposed Classes in the performance of the manner and means of their work.

29.     The work performed by Plaintiff and the Distributors simultaneously benefits or benefited both Flowers Foods and Holsum Bakery. Plaintiff and the Distributors were hired for the purpose of distributing products for Defendants.

30.     Plaintiff and members of the proposed Classes must strictly follow Defendants' instructions and adhere to the pricing, policies, and procedures negotiated between Defendants and their retailer-customers.

31.     Distributors use Defendants' hand-held computer to log the delivery, and Defendants bill customers using the data entered into the computer by the Distributor. The terms of the sale are negotiated between Defendants and its retailer-customer.

32.     Distributors place Defendants' products on the retailer-customer's shelves, remove stale or rejected product, and organize the retailer-customer's display shelf. If Defendants are running a sale or promotion, the Distributor also constructs and stocks the promotional display. Defendants usually reimburse Distributors for stale or rejected product.

33.     Defendants retain the exclusive right to control the manner and means by which Plaintiff and the Distributors perform their jobs.

34.     Defendants represented to Plaintiffs and other Distributors that they would run their businesses independently, have the discretion to use their business judgment, and have the ability to manage their businesses to increase profitability.

35.     Contrary to its representations, Defendants denied Plaintiff and other Distributors benefits of ownership and entrepreneurial skill by retaining and exercising the following rights:

a.   the right to negotiate the wholesale price for the purchase and sale of products;

b.   the right to negotiate shelf space in the stores in the Distributor's territory;

c.   the right to negotiate the retail sale price for products;

d.   the right to establish all sales and promotions and to require Distributors to follow them;

e.   the right to change orders placed by Distributors, to require them to pay for product they did not order, load it on their trucks, deliver it to stores, maintain the product in the store, remove the product from the store, and return it to the warehouse for credit; Distributors who did not attempt to distribute the extra product were billed for the full wholesale price of that product;

f.   the right to assign delivery stops to each Distributor in a particular order and require Distributors to get approval for following a different order;

g.   the right to discipline Distributors, up to and including termination, for reasons including hiring employees to run their routes, taking time off work, or refusing a specific order to deliver a product to a particular store at a particular time;

h.   the right to handle customer complaints against the Distributor and to take disciplinary action;

i.   the right to withhold pay for certain specified expenses;

j.   the right to unilaterally terminate the employment relationship;

k.   the right to unilaterally vary the standards, guidelines, and operating procedures; and

l.   various other rights reserved by Defendants.

36.   Plaintiff and members of the Classes were, or are, required to accept Defendants' conditions of employment or face termination.

37.     Defendants not only retained the rights listed above, but they exercised the rights as well.

38.     In another example, Defendants routinely modify a Distributor's product orders to increase the amount of the order. If a Distributor refuses the additional product, Defendants bill the Distributor for the product and deduct the cost from the Distributor's wages.

39.     Defendants require Distributors to process all transactions through a hand held computer they provide to them. The hand held computer controls the product prices, maintains customer information, tracks mileage, and monitors Defendants' business performance.

40.     Defendants control the Plaintiff's and Distributors' opportunities for profit or loss both by controlling wholesale pricing and negotiating retail pricing. Specifically, Defendants negotiate the sale of its products with major retailers. Plaintiff and members of the Classes then deliver the products to store locations per the agreement between Defendants and the retailer. Plaintiff lacks discretion as to what products to distribute to a particular store, whether to run sales or promotions, how frequently to service stores, and similar discretion that would allow him to increase (or decrease) the profitability of his work.

41.     Defendants also promote products and arrange for outside products to be on the retailers' shelves that are not sold or stocked by Plaintiff and members of the Classes, thus creating greater competition for shelf space and competition among the products that are sold. This negatively impacts the business and profitability for Plaintiff and members of the Classes.

42.     Distributors' investment in equipment to operate their route is relatively low. Many Distributors use their personal vehicles and a small truck to transport Flowers products to retailers. Apart from the purchase of a small trailer, there is no other investment necessary because Defendants provide computer equipment, administrative support, warehouse space, advertisements, promotional materials, bakery

trays, market advice, strategic development, and virtually every other business necessity. Plaintiff and Distributors typically drive a small box truck five days a week, and routinely use their small personal car to transport Flowers products.  Defendants even arrange for insurance and vehicle financing on behalf of Distributors; Distributors pay for the insurance through wage deductions.

43.    The distribution job performed by Plaintiff and Distributors does not require specialized skills.

44.    Plaintiff and Distributors provide services that are an integral part of Defendants' business enterprise, a baked goods distribution system.

45.    Despite their pervasive control over the means and manner of the Plaintiff's and Distributors' work, Defendants have uniformly classified all Distributors as "independent contractors."

46.    Because they were misclassified as non-employees, Plaintiff and Distributors were denied the rights and benefits of employment, including, but not limited to overtime premium wages.

47.    Plaintiff and Distributors have incurred expenses for equipment, insurance, product loss, product return, and other expenses that Defendant has required them to purchase or pay, or that are necessary for their work.

48.    Plaintiff and Distributors work, on average, a total of 50–55 hours during a seven-day workweek for which no Plaintiff or, upon information and belief, member of the proposed Classes have received overtime premium wages.

49.    Defendants' mischaracterization of the Distributors as independent contractors, the concealment or non-disclosure of the true nature of the relationship between Defendants and the Distributors, and the attendant deprivation of substantial rights and benefits of employment are part of an on-going unlawful practice by Defendants which this Court should enjoin.

## COLLECTIVE ACTION ALLEGATIONS

50.     Plaintiff brings Count I of this Complaint as a collective action, alleging violations of the FLSA on behalf of himself and all similarly situated individuals. The proposed Collective Class is defined as:

> All persons who are or have performed work as Distributors for Defendants in the State of Arizona under a "Distributor Agreement" or a similar written contract that they entered into during the period commencing three years prior to the filing of this Complaint through the trial in this action.

Plaintiff reserves the right to modify this definition prior to conditional certification of the FLSA Collective Class.

51.     Plaintiff has consented in writing to be part of this action pursuant to 29 U.S.C. § 216(b). Plaintiff's signed consent form is attached as Exhibit A.

52.     Plaintiff and members of the FLSA Collective Class are similarly situated in that they signed a Distributor Agreement or similar contract, have substantially similar job requirements, pay provisions, and are subject to Defendants' pervasive right to control their daily job functions.

53.     Plaintiff and members of the FLSA Collective Class routinely worked in excess of forty (40) hours in a week without overtime compensation.

54.     Upon information and belief, Defendants knew that Plaintiff and all similarly situated individuals performed work that required overtime pay and knowingly and willfully failed to pay Plaintiff's and similarly situated individuals' overtime wages due and owing.

55.     Defendants have therefore operated under a scheme to deprive Plaintiff and the FLSA Collective Class of overtime compensation by failing to properly compensate them for all time worked.

56.     Defendants' conduct, as set forth in this Complaint, was willful and has caused significant damages to Plaintiff and the FLSA Collective Class.

57.     Defendants are liable under the FLSA for failing to properly compensate Plaintiff and all similarly situated individuals, and notice of this lawsuit should be sent to them. Those similarly situated individuals are known to Defendants and are readily identifiable through Defendants' payroll records.

## CLASS ACTION ALLEGATIONS

58.     Plaintiff brings this Complaint as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a "Rule 23 Class" defined as follows:

> All persons who are or have performed work as "Distributors" for any Defendant in the State of Arizona under a "Distributor Agreement" or a similar written contract during the period commencing three years prior to the filing of this Complaint through the trial in this action.

Plaintiff reserves the right to redefine the Rule 23 Class prior to Class certification.

59.     Numerosity: Members of the Rule 23 Class are so numerous that their individual joinder is impracticable. The precise number of Class members is unknown to Plaintiff. However, upon information and belief, it is in excess of 150 individuals. The true number of Class members is, however, likely to be known by Defendants, and thus, Class members may be notified of the pendency of this action by first class mail, electronic, and published notice.

60.     Commonality: There are numerous questions of law and fact common to Plaintiff and the Rule 23 Class; those questions predominate over any questions that may affect individual Class members, and include the following:

a.  whether Plaintiff and members of the Rule 23 Class have been misclassified as independent contractors and actually were or are employees of Defendants;

b.  whether Defendants have violated the rights of Plaintiff and members of the Rule 23 Class under the Arizona wage laws by making illegal deductions from their wages, and depriving them of other benefits of being employees and requiring them to pay Defendants' expenses;

c.  whether Plaintiff and members of the Rule 23 Class are entitled to injunctive relief prohibiting Defendants from making illegal deductions from the wages of Plaintiff and members of the Class;

d.  whether Plaintiff and members of the Rule 23 Class are entitled to declaratory relief declaring that they are employees of Defendants;

e.  whether Plaintiff and members of the Rule 23 Class are entitled to declaratory relief declaring that the Distributor Agreements are unconscionable; and

f.  whether Plaintiff and members of the Rule 23 Class are entitled to injunctive relief requiring Defendants to convey to Plaintiff and the Class the rights, privileges, and benefits of employees.

61.  Typicality: Plaintiff's claims are typical of the other members of the Rule 23 Class. Plaintiff is informed and believe that, like other Distributors, Plaintiff was misclassified as an "independent contractor" when he actually was a statutory and common law employee, and was therefore deprived the protections of employee status under the law.  Plaintiff had the same duties and responsibilities as other Rule 23 Class members, and was subject to the same policies and practices, and the same or substantially similar conditions of employment.

62.  Adequacy: The Plaintiff will adequately represent the interests of the Rule 23 Class. He has been treated in the same manner as other Class members by Defendants and has been damaged by this treatment in the same manner as other class Members by his loss of overtime premium wages, his exclusion from employee compensation programs, plans and agreements, and his payment of Defendants' expenses. Plaintiff is committed to vigorously prosecuting this action. Plaintiff has retained attorneys who are well qualified to handle lawsuits of this type. Plaintiff has no interests that are adverse to those of the Rule 23 Class.

63.     Predominance: This case should be certified as a class action because the common questions of law and fact concerning Defendants' liability predominate over any individual questions, including the amount of damages incurred by each person.

64.     Superiority: A class action is the only realistic method available for the fair and efficient adjudication of the claims of the Rule 23 Class. The expense and burden of individual litigation makes it impracticable for members of the Rule 23 Class to seek redress individually for the wrongful conduct alleged in this Complaint. Were each individual member required to bring a separate lawsuit, the resulting multiplicity of proceedings would cause undue hardship and expense for the litigants and the Court, and create the risk of inconsistent rulings, which would be contrary to the interest of justice and equity. Litigating these claims in a single action will streamline discovery and avoid needless repetition of evidence at trial.

<u>COUNT I</u>
**VIOLATION OF THE FAIR LABOR STANDARDS ACT OF 1938**
**29 U.S.C. § 201 *et seq.***
**Overtime Violations**

(Brought by Plaintiff on behalf of himself and the FLSA Collective Class)

65.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding Paragraphs.

66.     Section 207(a)(1) of the FLSA provides in pertinent part:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any work week is engaged in commerce or in the production of goods for commerce, for a work week longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

67.     For purposes of the FLSA, the employment practices of Defendants were and are uniform in all respects material to the claims asserted in this Complaint throughout the State of Arizona.

68.     Plaintiff and the other members of the FLSA Collective Class, either regularly or from time to time, worked more than 40 hours per week, but did not receive overtime pay.

69.     At all relevant times, Defendants have had gross operating revenues in excess of $500,000.

70.     In committing the wrongful acts alleged to be in violation of the FLSA, Defendants acted willfully in that they knowingly, deliberately, and intentionally failed to pay overtime premium wages to Plaintiff and other members of the FLSA Collective Class.

71.     As a result of Defendants' failure to pay overtime wages, Plaintiffs and the other members of the FLSA Collective Class were damaged in an amount to be proved at trial.

72.     Therefore, Plaintiff demands that he and the other members of the FLSA Collective Class be paid overtime compensation as required by the FLSA for every hour of overtime worked in any work week for which they were not compensated, plus interest, damages, penalties, and attorneys' fees as provided by law.

## COUNT II
## DECLARATORY JUDGMENT
(Brought by Plaintiff on behalf of himself and the Rule 23 Class)

73.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding Paragraphs.

74.     Under the relevant laws of the United States and Arizona, Defendants misclassified Plaintiff and Rule 23 Class members as independent contractors rather than employees; therefore, pursuant to 28 U.S.C. § 2201 and A.R.S. §§ 12-1831 *et seq.*, the court should issue a declaratory judgment establishing that the Plaintiff and Rule 23 Class members are or were employees of Defendants, and that the Plaintiff and Rule 23 Class members are or were therefore entitled to all the rights and benefits of employment pursuant to the laws of the United States and Arizona.

75.     The Distributor Agreement that Distributors are required to sign is unconscionable.

76.     Plaintiff and the Rule 23 Class are entitled to declaratory judgment that the Distributor Agreement is unconscionable.

## COUNT III
### IMPROPER WITHHOLDING OF WAGES
### IN VIOLATION OF ARIZONA WAGE LAWS
### A.R.S. §§ 23-350 *et seq.*
(Brought by Plaintiff on behalf of himself and the Rule 23 Class)

77.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding Paragraphs.

78.     As established above, Plaintiff and Rule 23 Class members are employees, not independent contractors.

79.     It is unlawful under A.R.S. § 23-351(C) for an employer to require or permit an employee to work without paying compensation for all hours worked.

80.     It is unlawful under A.R.S. § 23-351(C)(3) for an employer to require or permit an employee to work without paying overtime wages due to the employee.

81.     It is unlawful under A.R.S. § 23-352 for an employer to make deductions from employee wages unless (1) the employer is required or empowered to do so by state or federal law; (2) the employer has written authorization from the employee; or (3) there is a reasonable good faith dispute as to the amount of wages due.

82.     Defendants, through their policies and practices described above, willfully violated Arizona's Wage Laws throughout the statutory period, and continuing through the present, as follows:

a.  By failing to pay the Plaintiff and other members of the Rule 23 Class their earned wages for all hours worked, in violation of A.R.S. § 23-351(C);

b. By failing to pay the Plaintiff and other members of the Rule 23 Class overtime pay in violation of A.R.S. § 23-351(C)(3)

c. By making deductions from wages in violation of A.R.S. § 23-352, including, but not limited to, deductions for warehouse fees, fuel, stale product, vehicle payments, inventory charges, "charge backs," and distributor fees;

d. By failing to make, keep, and preserve accurate time records with respect to the Plaintiff and other members of the Rule 23 Class sufficient to determine their wages in violation of A.R.S. § 23-364(D);

e. By other practices in violation of Arizona law.

83. Defendants' actions, described above, constitute continuing willful violations of Arizona's Wage Laws.

84. As set forth above, the Plaintiff and other members of the Rule 23 Class have sustained losses in compensation as a proximate result of Defendants' violations of Arizona law.  Accordingly, the Plaintiff, on behalf of himself and the Rule 23 Class members, seek damages in the amount of their unpaid earned compensation, including for the amounts unlawfully deducted, plus treble damages, as provided by A.R.S. § 23-355.

85. Plaintiff, on behalf of himself and Rule 23 Class members, seeks recovery of attorneys' fees and costs as provided by law.  *See, e.g.*, *Schade v. Diethrich*, 760 P.2d 1050, 1064 (Ariz. 1988).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests of this Court the following relief on behalf of himself, all members of the Classes and all other similarly situated individuals:

a. Designation of this action as a collective action on behalf of Plaintiff and those similarly situated, and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all those similarly situated apprising them of the

pendency of this action and permitting them to assert timely FLSA claims in this action by filing individual consent forms.

b.    Judgment that Plaintiff and those similarly situated are non-exempt employees entitled to protection under the FLSA;

c.    Judgment against Defendants for violation of the overtime provisions of the FLSA;

d.    Judgment that Defendants' violations of the FLSA were willful;

e.    An Order certifying the Rule 23 Class, appointing Plaintiff as Class Representative, and appointing the undersigned counsel of record as Class Counsel;

f.    An Order for declaratory and injunctive relief designating the Plaintiff and members of the Rule 23 Class as employees and enjoining Defendants from pursuing the illegal policies, acts and practices described in this Complaint;

g.    An Order declaring that the Distributor Agreements signed by Plaintiff and members of the Rule 23 Class are unconscionable;

h.    An Order declaring the Defendants' conduct as willful, not in good faith and not based on reasonable grounds;

i.    Reimbursement of unpaid wages at overtime rates for all overtime work as described in this Complaint;

j.    Reimbursement of illegal deductions from Plaintiff's and the Rule 23 Class' wages;

k.    Payment of any penalties or other amounts under any applicable laws, statutes or regulations, including but not limited to liquidated damages;

l.    Judgment in favor of each Class member for damages suffered as a result of the conduct alleged herein, to include pre-judgment interest;

m.    Award Plaintiff reasonable attorneys' fees and costs;

n.     Award Plaintiff and the other members of the Class punitive damages in an amount to be determined at trial; and

o.     Grant such other and further legal and equitable relief as this Court deems just and necessary.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury.

Respectfully submitted,

BAILLON THOME JOZWIAK & WANTA LLP

Date:  February 4, 2016            s/ Patricia A. Bloodgood
                                   Shawn J. Wanta, *pro hac vice*
                                   Patricia A. Bloodgood, *pro hac vice*
                                   100 S. Fifth St., Suite 1200
                                   Minneapolis, MN 55402
                                   Telephone: (612) 252-3570
                                   Facsimile: (612) 252-3571
                                   Email: sjwanta@baillonthome.com
                                   Email: pabloodgood@baillonthome.com

                                   Charles S. Zimmerman, AZ Bar No. 029602
                                   Bradley c. Buhrow, AZ Bar No. 032387
                                   ZIMMERMAN REED, PLLP
                                   14646 N. Kierland Blvd., Suite 145
                                   Scottsdale, AZ 85254
                                   Telephone: (480) 348-6400
                                   Email: Hart.Robinovitch@zimmreed.com
                                   Email: Charles.Zimmerman@zimmreed.com

                                   Susan E. Ellingstad, *pro hac vice*
                                   Brian D. Clark, *pro hac vice*
                                   Rachel A. Kitze Collins, *pro hac vice*
                                   LOCKRIDGE GRINDAL NAUEN PLLP
                                   100 Washington Ave. S., Suite 2200
                                   Minneapolis, MN 55401
                                   Telephone: (612) 339-6900
                                   Facsimile: (612) 339-0981
                                   Email: seellingstad@locklaw.com
                                   Email: bdclark@locklaw.com
                                   Email: rakitzecollins@locklaw.com

                                   *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2016, I electronically submitted the attached document to the Clerk's Office using the CM/ECF for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Alexandra J Gill
Ogletree Deakins Nash Smoak & Stewart PC
2415 E Camelback Rd., Ste. 800
Phoenix, AZ 85016
Tel. 602-778-3705
Fax. 602-778-3750 (fax)
Email: alexandra.gill@ogletreedeakins.com
Attorneys for Defendants

Tibor Nagy, Jr.
Ogletree Deakins Nash Smoak & Stewart PC
3430 E Sunrise Dr., Ste. 220
Tucson, AZ 85718
Tel. 520-544-0300
Fax. 520-544-9675
Email: tibor.nagy@ogletreedeakins.com
Attorneys for Defendants

Kevin P Hishta
Ogletree Deakins Nash Smoak & Stewart PC
191 Peachtree St. NE, Ste. 4800
Atlanta, GA 30303
Tel. 404-881-1300
Fax. 404-870-1732
Email: kevin.hishta@ogletreedeakins.com
Attorneys for Defendants

Margaret Santen Hanrahan
Ogletree Deakins Nash Smoak & Stewart PC
191 Peachtree St. NE, Ste. 4800
Atlanta, GA 30303
Tel. 404-881-1300
Fax. 404-870-1732
Email: maggie.hanrahan@ogletreedeakins.com
Attorneys for Defendants

A Craig Cleland
Ogletree Deakins Nash Smoak & Stewart PC
191 Peachtree St. NE, Ste. 4800
Atlanta, GA 30303
Tel. 404-881-1300
Fax. 404-870-1732
Email: craig.cleland@ogletreedeakins.com
Attorneys for Defendants


s/ Patricia A. Bloodgood
Patricia A. Bloodgood