**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Terry Coyle, | No. CV-15-01372-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Flowers Foods Incorporated, et al., | |
| Defendants. | |

Plaintiffs have filed a motion for conditional class certification and court-supervised notice of pending collective action. (Doc. 115.) The motion is fully briefed and neither party requested oral argument. For the reasons below, the motion is granted.

## **BACKGROUND**

In July 2015, Plaintiff Terry Coyle brought this collective action on behalf of himself and other similarly situated Distributors against Defendants Flowers Foods Inc. (Flowers) and its subsidiary, Holsum Bakery Inc. (Holsum), alleging violations of the Fair Labor Standards Act (FLSA) and breach of fiduciary duties. (Doc. 1.) On February 4, 2016, Coyle filed an amended complaint dropping his fiduciary duties claim and adding claim for violation of the Arizona Wage Law. (Doc. 72.) In the following months, Craig Coppens, Albert Younan, and David Petch filed consent forms joining the lawsuit as opt-in plaintiffs. (Docs. 127-1; 169-1; 179-1.)

Defendants are in the wholesale bakery business and distribute their bakery

1 products through a "centralized network of communication, distribution, and 2 warehousing facilities."  (Doc. 72, ¶¶ 1, 10.)  Defendants integrate "Independent 3 Distributors" into the system to "deliver fresh baked goods and certain cake products to 4 Defendants' customers." (*Id.*, ¶ 2.)  Distributors "stock the products on store shelves and 5 assemble promotional displays designed and provided by Defendants." (*Id.*)  Plaintiffs 6 consist of four named Distributors that deliver Defendants' bakery products to 7 Defendants' customers.

8 As Distributors, Plaintiffs arrive early in the morning to load their vehicles with 9 Defendants' products and deliver the products to Defendants' customers "at the time and 10 place specified by Defendants."  (*Id.*, ¶¶ 17, 18.)  All Distributors must sign a 11 Distribution Agreement, which sets forth the terms of the relationship, "has no specific 12 end date[,] and can be terminated by either party at any time with limited notice." (*Id.*, ¶ 13 19.)  The Distribution Agreement provides Defendants the ability to extend credit to their 14 customers, set pricing terms, and control "virtually all terms of the [customer] 15 relationship." (*Id.*, ¶ 21.)  "The result is that Distributors' job duties and ability to earn 16 income is tied directly to the sale and promotion of products outside of their control." 17 (*Id.*, ¶ 24.)  Distributors typically work 50-55 hours during the seven-day workweek. 18 (*Id.*, ¶ 48.)  They "must strictly follow Defendants' instructions and adhere to the pricing, 19 policies, and procedures negotiated between Defendants and their retailer-customers." 20 (*Id.*, ¶ 30.)  Plaintiffs allege that Defendants direct and control them as Independent 21 Distributors as if they are employees but wrongfully classify them as independent 22 contractors, denying them the benefits and protections afforded by the FLSA and the 23 Arizona Wage Law. (*Id.*, ¶ 49.)

24 Plaintiffs now move for conditional certification of the following collective action 25 under the FLSA:

26
27
28
> All persons who are or have performed work as Distributors for Defendants under a "Distributor Agreement" with Holsum Bakery, Inc. or a similar written contract that they entered into during the period commencing three years prior to the commencement of this action through the close of the

- 2 -

>Court-determined opt-in period and who file a consent to join this action pursuant to 29 U.S.C. § 216(b).

(Doc. 115 at 2.) The collective action is limited to Distributors in Arizona. It seeks unpaid overtime compensation and a declaration that the Distributors are employees entitled to the protections of the FLSA and Arizona laws. (Doc. 72, ¶¶ 73-76.)

## ANALYSIS

The FLSA prohibits covered employers from employing any employees "for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). "Any employer who violates the provisions of . . . section 207 . . . shall be liable to the employee or employees affected in the amount of . . . their unpaid overtime compensation[.]" *Id.* § 216(b). A a collective action to recover these damages may be brought "against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." *Id.* Employees not named in the complaint who wish to join the action must give their consent in writing to the court in which the action is brought. *Id.*

"Section 216(b) does not define 'similarly situated,' and the Ninth Circuit has not construed the term." *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 925 (D. Ariz. 2010). Although courts in other circuits have taken different approaches in this determination, "district courts within the Ninth Circuit generally follow the two-tiered or two-step approach for making a collective action determination." *Id.*; *see also Villarreal v. Caremark LLC*, No. Cv-14-00652-PHX-DJH, 2014 WL 4247730, at *3 (D. Ariz. Aug. 21, 2014) ("The majority of courts, including those within the District of Arizona, have adopted the two-tiered approach in deciding whether to grant FLSA collection action status." (internal quotations and alterations omitted)). Under this approach,

>the court determines, on an ad hoc case-by-case basis, whether plaintiffs are similarly situated. This requires the court to first make an initial 'notice stage' determination of whether plaintiffs are similarly situated. At this

> first stage, the court requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan. If a plaintiff can survive this hurdle, the district court will conditionally certify the proposed class and the lawsuit will proceed to a period of notification, which will permit the potential class members to opt-into the lawsuit. Once the notification period ends, the Court moves on to the second step of the certification process. At the second step, in response to a motion to decertify the class filed by the defendant, the court makes yet another determination whether the proposed class members are similarly situated; this time, however, the court utilizes a much stricter standard to scrutinize the nature of the claims.

*Colson*, 687 F. Supp. 2d at 925 (internal citations and some quotations omitted).

Although the plaintiffs' "burden is light," conditional certification is "by no means automatic." *Id.* "All that need be shown by the plaintiff is that some identifiable factual or legal nexus binds together the various claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA." *Wertheim v. State of Arizona*, No. CIV 92-453 PHX RCB, 1993 WL 603552, at *1 (D. Ariz. Sept. 30, 1993). The allegations need not be "strong [n]or conclusive;" the plaintiff need only show "that there is some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged policy or practice." *Colson*, 687 F. Supp. 2d at 926. "Plaintiffs need only show that their positions are similar, not identical, to the positions held by the putative class members." *Juvera v. Salcido*, 294 F.R.D. 516, 520 (D. Ariz. 2013) (internal quotations omitted). In other words, "[t]he court must only be satisfied that a reasonable basis exists for the plaintiffs' claims or class wide injury." *Bollinger v. Residential Capital, LLC*, 761 F. Supp. 2d 1114, 1119 (W.D. Wash. 2011) (internal quotations marks omitted).

Ultimately, whether a collective action should be conditionally certified is within the discretion of the court. *Colson*, 687 F. Supp. 2d at 925. The court should not review the underlying merits of the action, nor should it "resolve factual disputes . . . at the preliminary certification stage of an FLSA collective action." *Id.* at 926. "The court's determination at this first step is based primarily on the pleadings and any affidavits

submitted by the parties." *Kelsey v. Entm't U.S.A. Inc.*, 67 F. Supp. 3d 1061, 1065 (D. Ariz. 2014) (internal quotations omitted).

**I. Similarly Situated**

Applying the two-step approach, "[l]ike virtually every other district court in the Ninth Circuit" has, the Court concludes Plaintiffs have met their low burden. *Kelsey*, 67 F. Supp. 3d at 1065. Plaintiffs argue that all Distributors employed by Defendants are similarly situated because they have been "uniformly misclassified as independent contractors pursuant to the Distribution Agreements." (Doc. 115 at 10.) In the amended complaint, Plaintiffs allege that the members of the class routinely work in excess of forty hours per week without overtime compensation. (Doc. 72, ¶ 53.) Plaintiffs allege that all members of the putative class must sign Distributor Agreements, which are identical in all material aspects and strictly govern their relationship with Defendants and Defendants' customers. (*Id.*, ¶ 52.) Distributors allegedly "have no ability to bargain or negotiate over the terms of the distribution agreement," (*Id.*, ¶ 20), and Defendants admit that they classify Distributors as independent contractors, (Doc. 84, ¶ 2).

Plaintiffs allege that all class members "have substantially similar job requirements, pay provisions, and are subject to Defendants' pervasive right to control their daily job functions." (*Id.*) Distributors "deliver fresh baked goods and certain cake products to Defendants' customers" and "stock the products on store shelves and assemble promotional displays designed and provided by Defendants." (*Id.*, ¶ 2.) The time and place of delivery is dictated by Defendants. (*Id.*, ¶ 18.) Defendants, not Distributors, negotiate substantially all pricing terms of the products, including wholesale and retail prices, service and delivery agreements, shelf space to display products, product selection, promotional pricing, and print advertisements. (*Id.*, ¶ 21.) Distributors must use handheld computers to log deliveries, which Defendants use to bill customers. (*Id.*, ¶ 32.) The computers also track Distributors' mileage. (*Id.*, ¶ 39.)

Plaintiffs allege Defendants, not Distributors, have the rights to negotiate the wholesale price for purchase and sale of products; negotiate shelf space; negotiate retail

1 sales price for products; establish sales and promotions and require Distributors to follow
2 them; change orders placed by Distributors and require them to pay for product that they
3 did not order, load it on their trucks, deliver to stores, maintain the product in the stores,
4 remove the product from the store, and return it to the warehouse for credit; bill
5 Distributors for failing to attempt to distribute extra product; assign delivery stops to each
6 Distributor in a particular order and require Distributors to get approval for following a
7 different order, discipline Distributors, handle customer complaints against Distributors,
8 withhold pay for expenses. (*Id.* ¶ 35(a)-(i).)

9 These allegations are supported by the declarations of Terry Coyle and Craig
10 Coppens. Coyle states that he entered into a Distribution Agreement with Defendants in
11 2008. (Doc. 116, ¶¶ 2-3.) His job as a Distributor entails arriving at the warehouse early,
12 loading up his GMC truck with Flowers products, driving to Flowers' various customers
13 based on a geographic route, stocking the customer's shelves with Flowers product,
14 organizing the display shelf, and removing stale product from the store. (*Id.*, ¶ 4.) On
15 Wednesdays and Sundays, Coyle performs "pulls ups," wherein he travels to the larger
16 stores in his territory and pulls bread from the stock room to refill empty shelves. (*Id.*)

17 Coyle states that he is required to use Flowers' handheld computer system, which
18 lists the prices of the products, delivery quantities, and historical sales. (*Id.*, ¶ 5.) The
19 information is controlled by Flowers and is preprogrammed with "suggested orders."
20 (*Id.*) Coyle states that Flowers controls the price that he pays for the product, as well as
21 the price that Flowers' large and chain store customers pay for the product. (*Id.*) Flowers
22 can deduct unapproved price changes from Coyle's pay. (*Id.*)

23 Coyle is required to order more product than needed by customers, which results
24 in him having to collect stale products from shelves and return it to Flowers. (*Id.*, ¶ 6.)
25 He is also required to make a certain number of stops each week with each customer,
26 regardless of whether the stop is necessary. (*Id.*, ¶ 7.) Occasionally, Flowers makes
27 changes to orders that Coyle has placed and he is required to "deliver and stock all
28 product that Flowers demands." (*Id.*, ¶ 8.) Coyle states that Flowers retains authority to

1  decide prices and make other product decisions, including negotiating directly with
2  customers regarding orders, shelf space, pricing, and supply. (*Id.*, ¶ 9.) Coyle further
3  states that Flowers monitors his deliveries using the handheld computer system and visits
4  with customers to track his progress. (*Id.*, ¶ 10.) Coyle believes Flowers does this for all
5  its Distributors. (*Id.*) He states that he works over 40 hours per week without overtime
6  compensation and believes that most Flowers Distributors do the same. (*Id.*, ¶ 11.)
7  Coyle attached a copy of his delivery route and Distribution Agreement. (Doc. 116-1.)

8        Coppens' declaration is very similar to Coyle's. Coppens states that he signed a
9  Distribution Agreement with Defendants in 1996. (Doc. 117, ¶¶ 2-3.) Like Coyle,
10 Coppens arrives at the warehouse early to load his personal truck with Defendants'
11 products. (*Id.*, ¶ 4.) He then drives to Defendants' customers to deliver the products,
12 restock the shelves, organize the displays, and remove stale product from the store. (*Id.*)
13 Coppens also performs "pull ups" and is required to use Defendants' handheld computer
14 system. (*Id.*, ¶ 4-5.) Defendants maintain the same control over Coppens as Coyle, and
15 Coppens believes that Defendants exercise the same control over other Distributors. (*Id.*,
16 ¶¶ 5-10.) Coppens works over forty hours per week without overtime compensation and
17 believes other Distributors do the same. (*Id.*, ¶¶ 11-12.) Coppens also submitted his
18 delivery route and a copy of his Distributor Agreement, which is very similar to Coyle's.
19 (Doc. 117-1.)

20       Defendants argue Plaintiffs' allegations are conclusory and require more
21 evidentiary support than Plaintiffs have proffered. (Doc. 165 at 7-8.) They cite *Colson v.*
22 *Avnet, Inc.* in support of their contention that simply alleging misclassification as
23 independent contractors is insufficient to establish that Plaintiffs are similarly situated to
24 other putative class members. *Colson*, however, denied conditional certification because
25 the three affidavits submitted by the plaintiffs were vague and based on "unspecified
26 hearsay." 687 F. Supp. 2d at 928. One of the plaintiff's declarations cited to
27 "discussions . . . with [unidentified] coworkers" and was "filled with statements that lack
28 personal knowledge." *Id.* The court noted: "Essentially, [the plaintiff's] declaration

- 7 -

1 describes the experience of one former Avnet employee in one office who is claiming to
2 have not been paid the overtime wages she was entitled to." *Id.* at 929.  This is not the
3 case here.  Plaintiffs' declarations are based on personal knowledge and experience and
4 contain substantial allegations supporting their contention that all Distributors are victims
5 of a single decision, policy, or plan—misclassification as independent contractors under
6 the Distribution Agreements.

7 Defendants also argue that Plaintiffs fail to demonstrate that they are similarly
8 situated because allegations of independent contractor misclassification involve highly
9 factual and individualized analyses.  They assert that the six-factor "economic realities
10 test" set forth in *Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 754 (9th Cir.
11 1979) demonstrates that Plaintiffs are not similarly situated.  Defendants cite *In re FedEx
12 Ground Package System, Inc.*, 662 F. Supp. 2d 1069, 1083 (N.D. Ind. 2009), a case
13 which applied the economic realities test and concluded that FLSA collective action
14 certification was inappropriate given the individualized nature of the analysis.  *In re
15 FedEx*, however, was a multi-district litigation that involved a determination of whether
16 the plaintiffs' FLSA misclassification claims were suitable for certification under Fed. R.
17 Civ. P. 23.  *In re FedEx* did not apply the two-step test employed by the Ninth Circuit,
18 and thus its analysis is not applicable here.

19 Defendants submit a great deal of evidence relating to the job responsibilities of
20 Distributors, including several declarations from Distributors who do not wish to be
21 considered employees.  But the underlying merits of Plaintiffs' substantive claims are not
22 at issue here.  *See Colson*, 687 F. Supp. 2d at 926; *Barrera v. U.S. Airways Grp., Inc.*,
23 No. CV-2012-02278-PHX-BSB, 2013 WL 4654567, at *6 (D. Ariz. Aug. 30, 2013)
24 ("Any variation in the putative class members' job responsibilities is a factor to be
25 considered at the second stage of the analysis after completion of discovery.").  The
26 Court has already determined that Plaintiffs have demonstrated that they are similarly
27 situated to other putative class members.  It need not determine whether Plaintiffs' claims
28 are meritorious.  In fact, the Court need not consider any of Defendants' evidence and

declarations at this stage because they pertain to the second step of the two-step approach. *See e.g.*, *Villarreal v. Caremark LLC*, 66 F. Supp. 3d 1184, 1190 (D. Ariz. 2014) ("Given that Caremark's declarations pertain to the second, and not the first tier of conditional class certification, this Court declines to consider them at this stage."); *Sanchez v. Sephora USA, Inc.*, No. 11-03396 SBA, 2012 WL 2945753, at *4 (N.D. Cal. July 18, 2012) ("Again, federal courts are in agreement that evidence from the employer is not germane at the first stage of the certification process, which is focused simply on whether notice should be disseminated to potential claimants."); *Luque v. AT & T Corp.*, No. C 09-05885 CRB, 2010 WL 4807088, at *5 (N.D. Cal. Nov. 19, 2010) (refusing to consider thirty declarations submitted by defendant employer submitted in opposition to the plaintiffs' motion for conditional collective action certification).

Next, Defendants argue that allegations of misclassification under the FLSA are insufficient to establish that Plaintiffs and the putative class members are similarly situated. But courts in this district and other districts have routinely held otherwise. *See, e.g.*, *Kelsey*, 67 F. Supp. 3d at 1065-66 (finding exotic dancers classified as independent contracts were similarly situated for FLSA collective action); *Villarreal*, 66 F. Supp. 3d at 1194 (finding benefits analysts classified as independent contractors were sufficiently situated to other putative class members); *Anderson v. Ziprealty, Inc.*, No. CV 12-0332-PHX-JAT, 2013 WL 1882370, at *4 (D. Ariz. May 3, 2013) (conditional certification appropriate where plaintiffs were classified as independent contractors); *Scott v. Bimbo Bakeries, USA, Inc.*, No. 10-3154, 2012 WL 645905, at *8 (E.D. Pa. Feb. 29, 2012) ("all drivers are classified as 'independent contractor' under the agreement, which weighs in favor of conditional certification"). This is especially the case here, where Plaintiffs have come forth with substantial allegations of a common decision, policy, or plan affecting all of Defendants' Arizona Distributors.

Defendants argue that the Motor Carrier Act exemption precludes certification because it requires in-depth factual analysis to determine whether it applies to each putative class member. (Doc. 165 at 19.) The potential applicability of a FLSA

exemption, however, does not preclude conditional certification at step one; it is relevant at step two of the two-step approach. *See, e.g.*, *Barrera*, 2013 WL 4654567, at *5 (refusing to consider carrier by air exemption at step one); *Neary v. Metro. Prop. & Cas. Co.*, 517 F. Supp. 2d 606, 620 (D. Conn. 2007) (noting that "Defendant's argument that in determining whether its claims of applicability of the administrative exemption is valid, individualized inquiry is necessary, does not preclude certification at this first stage"). Thus, the Court declines to consider this argument.

Defendants also argue that the Court should follow *Martinez v. Flowers Foods, Inc.*, No. 15-5112, a recent decision from the Central District of California. (Doc. 165 at 21.) In *Martinez*, the court denied the plaintiffs' motion for Rule 23 certification, which carries a higher burden than Plaintiffs are required to show here. *Martinez* is off point.

Last, Defendants argue that the collective action should be certified only for the Tucson, Arizona Distributors because Coyle and Coppens work out of the Tucson distribution center. Defendants operate 12 distribution centers in Arizona and assert Plaintiffs have failed to present evidence that all the Arizona Distributors are similarly situated. Courts have limited the scope of the collective action where the plaintiffs fail to provide evidence regarding practices at other facilities. *See, e.g.*, *Kelsey*, 67 F. Supp. 2d at 1068-69 (limiting scope of collective action where exotic dancers provided evidence that they were similarly situated to other dancers at defendant's businesses in Phoenix and Tucson where they worked, but failed to provide similar evidence regarding the Glendale; Greensboro, N.C.; Brunswick, OH; Canton, OH; and Cleveland, OH locales); *Thompson v. RGT Mgmt., Inc.*, No. 2:11-cv-02573-AJT-dkv, 2012 WL 3261059, at *3 (W.D. Tenn. June 8, 2012) *adopted by* 2012 WL 3260431 (limiting scope of collective action because the plaintiff only worked at three of the fifty-four Taco Bells named in the class). Here, however, all Arizona Distributors are controlled by the same subsidiary of Flowers: Holsum. *Cf. Kelsey*, 67 F. Supp. 2d at 1069 (finding that it made little sense to extend the class to geographic regions in which the plaintiffs did not work considering that "Defendants are separate legal entities, rather than branches of a single defendant

corporation"). And it is reasonable to infer that Holsum uses the same Distributor Agreement at all twelve of its Arizona warehouses. As such, the Court will not limit the scope of the proposed collective action.

In conclusion, Plaintiffs' allegations and declarations demonstrate a "reasonable basis" for Plaintiffs' alleged "class wide injury." *See Bollinger*, 761 F. Supp. 2d at 1119. Plaintiffs have shown, at least preliminarily, that they are "victims of a single decision, policy, or plan," i.e., improper classification as independent contractors under the Distribution Agreement. *See Colson*, 687 F. Supp. 2d at 925. Accordingly, the Court finds Plaintiffs have met their light burden to demonstrate that they are similarly situated to other putative class members and the collective action is hereby conditionally certified.

**II. Notice**

In addition to certification, Plaintiffs seek distribution of judicial notice to putative class members. "The district court has discretion regarding the form and content of the notice." *Anderson*, 2013 WL 1882370, at *4. "The overarching policies of the FLSA's collective suit provisions require that the proposed notice provide accurate and timely notice concerning the pendency of the collective action, so that potential plaintiffs can make informed decisions about whether to participate." *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011) (citing *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)). Plaintiffs have submitted a Proposed Notice, (Doc. 115-1), and Defendants have proposed a number of changes, (Doc. 165 at 22-26.)

The Court rejects Defendants' arguments that the notice (1) is confusing because it uses the terms "Flowers," "Holsum," and "Defendants" somewhat interchangeably, (2) fails to adequately describe Defendants' legal position, and (3) fails to inform potential opt-in plaintiffs that they could end up liable for Defendants' costs. The notice is not confusing. It explicitly states that "Defendants deny these allegations" and adequately describes Defendants' legal position on the following page. (Doc. 115-1 at 2-3.) Further, any reference to potential liability for Defendants' costs could serve only to "discourage participation in the lawsuit." *Green v. Exec. Coach & Carriage*, 895 F. Supp. 2d 1026,

1030 (D. Nev. 2012) (internal quotation marks omitted).

Defendants assert that "Honorable Douglas L. Rayes" should be removed from the notice because it suggests judicial endorsement of the action. The notice states: "The Honorable Douglas L. Rayes is assigned to this case." (Doc. 115-1 at 2-3.) It does not mention that the case is "approved" or "authorized" by the Court, and therefore Plaintiffs need not remove it. *Contra Villarreal*, 66 F. Supp. 2d at 1196 (striking from the notice the phrase: "This Notice and its Content have been authorized by the United States District Court for the District of Arizona, the Honorable Diane Humetewa, U.S. District Judge").

Defendants argue the notice should be amended to include their attorneys' contact information. Courts have ordered that such information be included on a collective action notice. *See, e.g.*, *Bados Madrid v. Peak Construction, Inc.*, No. 2:09-cv-00311 JWS, 2009 WL 2983193, at *3 (D. Ariz. Sept. 17, 2009). Plaintiffs do not object to this proposed amendment, and therefore Defendants' counsel contact information shall be included on the notice.

Defendants argue the opt-in period should be shortened from 90 days to 60 days. The Court agrees. A 60 day opt-in period is sufficient and will ensure efficient resolution of this action. The period will run from the time the notice is mailed. *See Barrera*, 2013 WL 4654567, at *9.

Defendants object to posting the notice at each of Holsum's warehouses as duplicative given that the notices will be sent to putative class members via first-class mail. The Court disagrees. Posting notices at the warehouses is a cost-efficient way to notify potential opt-in plaintiffs of the action and places no burden on Defendants. This method has been endorsed by numerous district courts, and the Court finds it appropriate here. *See Bados Madrid*, 2009 WL 2983193, at *3 ("while notice by first class mail is typically sufficient, numerous district courts have approved notice by first class mail in combination with posting at the workplace").

Last, Plaintiffs request that the Court order Defendants to produce information

relating to all Distributors who worked for Defendants during the proposed class period, including names, last known mailing addresses, dates of employment, job titles, respective warehouses, phone numbers, and email addresses. (Doc. 115 at 14.) Defendants object to providing phone numbers and email addresses, but do not object to providing names, last known mailing addresses, dates of contract, job titles, and warehouse locations. The Court finds Defendants' proposition sufficient to accomplish the objective of providing notice to putative class members via mail. As such, Defendant need not provide telephone numbers and email addresses of current and former Distributors.

**IT IS ORDERED** that Plaintiffs' motion for conditional class certification and court-supervised notice of pending collective action, (Doc. 115), is **GRANTED**.

**IT IS FURTHER ORDERED** that, within seven days of the date of this Order, Plaintiffs shall submit a revised copy of the Proposed Notice for final court review. The final Notice to potential plaintiffs and consent to become party plaintiff shall be mailed no later than fourteen days after the Court issues final authorization of the Proposed Notice.

**IT IS FURTHER ORDERED** that, within seven days of the date of this Order, Defendants shall produce the names, last known addresses, job titles, dates of contract, and warehouse locations of all current and former Distributors who worked for Defendants during the class period.

Dated this 29th day of August, 2016.

Douglas L. Rayes
United States District Judge